THE PEOPLE *ex rel.* N. DAVID GRAF *et al.*, Plaintiffs-Appellants, v. THE VILLAGE OF LAKE BLUFF, Defendant-Appellee.

Second District   No. 2—99—1235

Opinion filed May 7, 2001.

Samuel J. Ruffolo, of Baum, Ruffolo & Marzal, Ltd., Michael W. Rathsack, of Law Offices of Michael W. Rathsack, both of Chicago, and Cornelius P. Callahan, of Lake Bluff, for appellants.

Steven M. Elrod, Peter M. Friedman, and Julie A. Tappendorf, all of Holland & Knight, L.L.P., of Chicago, for appellee.

JUSTICE GROMETER delivered the opinion of the court:

This appeal arises from a *quo warranto* action challenging the annexation of two areas of land in Lake County by defendant, the Village of Lake Bluff. Plaintiffs consist of two distinct groups (collectively plaintiffs): N. David Graf, William S. Price, and Richard W. Surkamer (the Village plaintiffs), who are residents of the Village of Lake Bluff (the Village), and Elmer L. Gottschalk, Jr., who resides in the second parcel annexed by the Village, which is known as the Sanctuary. This action comes to this court following the trial court's denial of plaintiffs' application for leave to file a complaint in *quo warranto*. For the reasons that follow, we affirm in part, reverse in part, and remand the cause for further proceedings.

## BACKGROUND

On November 24, 1980, the Village annexed a parcel of land, commonly referred to as the Triangle. This parcel consisted of a triangle-shaped area located west of the Village. As part of this annexation, the Village also annexed a railroad right-of-way running from the Triangle to the Village. The right-of-way ran parallel to the borders of the Village and the Triangle. The right-of-way was 1,000 feet long and 100 feet wide. The Village annexed a portion of this right-of-way such that 102 feet of the right-of-way overlapped the border of the Village. As part of the annexation process, Judge Strouse, of the circuit court of Lake County, issued an order dated November 7, 1980, approving the annexation. This order included findings that the petition for annexation conformed with the applicable statutory requirements (see Ill. Rev. Stat. 1979, ch. 24, par. 7—1—4). This order was not appealed. The Triangle has remained undeveloped since the 1980 annexation.

In 1998, the Village sought to annex a parcel of land known as the Sanctuary. The Sanctuary bordered the western edge of the Triangle but was not otherwise contiguous with the Village. The Village board

adopted an ordinance initiating this process on August 10, 1998. The Village's board of trustees consists of six trustees and a president. One of the trustees voting in favor of the ordinance was not physically present and participated by telephone. The ordinance passed by a four to two vote. The Village then sought the approval of the circuit court of Lake County. See 65 ILCS 5/7—1—4 (West 1998). The court found the annexation to comply with the statutory requirements and directed that the annexation be submitted by referendum to the electors residing in the Sanctuary. A majority of the electors voted in favor of the annexation.

On June 2, 1999, plaintiffs filed their application for leave to file a complaint in *quo warranto*. Plaintiffs challenged both annexations, contending, *inter alia*, that the annexation of the Sanctuary cannot stand, for it is dependent upon the earlier, illegal annexation of the Triangle. The trial court denied plaintiffs' request for leave to file a complaint in *quo warranto*. Two bases were articulated for this denial. First, the trial court found that all plaintiffs lacked standing to challenge these annexations. The trial court held that plaintiffs' status as residents and taxpayers was insufficient to confer standing upon them. Second, the court found that it was foreclosed from considering plaintiffs' challenge to the two annexations based on their allegations that the parcels annexed were not contiguous to the Village. According to the trial court, contiguity is a question of fact. Since both annexations were approved by trial courts, plaintiffs' current action amounts to an impermissible collateral attack upon the findings rendered in the earlier annexation proceedings. Plaintiffs also contended that the meeting of the board of trustees where the annexation of the Sanctuary was approved violated the Open Meetings Act (5 ILCS 120/1 *et seq.* (West 1998)); however, the trial court did not base its decision upon this ground.

## STANDING

■ Plaintiffs contend that the trial court erred in finding that they lacked standing to bring a *quo warranto* action. In reviewing a trial court's decision on a matter of standing, we apply the abuse of discretion standard. *People ex rel. Vuagniaux v. City of Edwardsville*, 284 Ill. App. 3d 407, 416 (1996). The defendant bears the burden of demonstrating that a plaintiff lacks standing to bring an action. *Vuagniaux*, 284 Ill. App. 3d at 416. In a *quo warranto* action, a specific personal interest of the plaintiff must appear in the pleadings. *People ex rel. Hanrahan v. Village of Wheeling*, 42 Ill. App. 3d 825, 833 (1976). Conclusional pleading of such an interest is not sufficient. *Hanrahan*, 42 Ill. App. 3d at 833.

■ In order to contest an annexation in *quo warranto*, a plaintiff must assert a special interest. *People ex rel. First National Bank v. City of North Chicago*, 158 Ill. App. 3d 85, 98 (1987). The interest alleged to be invaded must be a private right of the plaintiff, rather than an injury common to the public. *First National Bank*, 158 Ill. App. 3d at 98. It must be a personal interest; however, the fact that members of the community share a like interest does not defeat standing. *People ex rel. Nelson v. Village of Long Grove*, 169 Ill. App. 3d 866, 871 (1988). Furthermore, the challenged action must have a direct, substantial, and adverse effect upon the interest asserted. *People ex rel. Durst v. Village of Germantown Hills*, 51 Ill. App. 3d 969, 971 (1977). Mere status as a resident has been held an insufficient basis to challenge an annexation (*People v. Wood*, 411 Ill. 514, 521 (1952)), as has the bare allegation of one's status as a taxpayer (*People ex rel. Vanderhyden v. Village of Elwood*, 5 Ill. App. 3d 590, 592-93 (1972)).

■ However, where one can show a direct, substantial, and adverse impact upon one's taxes as a result of the challenged action, standing exists. *Vanderhyden*, 5 Ill. App. 3d at 593. Individuals' interest in the taxes collected from them personally is distinct, in many ways, from the public's general interest in the enforcement of the law. *People ex rel. McCarthy v. Firek*, 5 Ill. 2d 317, 324 (1955). This interest is both personal and substantial, and it is not diminished simply because other taxpayers share a similar interest. *People ex rel. Hamer v. Board of Education of School District No. 113, County of Lake*, 132 Ill. App. 2d 46, 49 (1971); *People ex rel. McCarthy*, 5 Ill. 2d at 324; *cf. People ex rel. Henderson v. City of Bloomington*, 38 Ill. App. 2d 9, 12 (1962) ("Furthermore, it may be properly observed that all members of the general public do not pay school taxes. Those upon whom such taxes fall certainly do have a personal interest in the amount they are to pay"). Plaintiffs must show a high probability or certainty that their taxes will increase. *Hamer*, 132 Ill. App. 2d at 48-49. Thus, the mere fact that one is a taxpayer is insufficient to confer standing; however, where a demonstrable adverse tax effect exists, standing does as well. *Hanrahan*, 42 Ill. App. 3d at 833-34.

■ Applying the foregoing principles to the Village plaintiffs, it becomes clear that they lack standing to bring this challenge. In their petition for leave to file a *quo warranto* complaint, these plaintiffs allege that the annexation of the Sanctuary will cause tax revenue generated from sales tax paid by three automobile dealerships to be diverted to provide municipal government for the Sanctuary. These revenues, according to these plaintiffs, would have been used either to provide them services or to reduce or prevent future tax increases. These speculative allegations are insufficient. First, plaintiffs have not al-

leged that the Sanctuary consists of tax-exempt property or that the tax revenue generated from this parcel will be insufficient to offset the cost of providing governmental services. In *People ex rel. Kirby v. City of Effingham*, 43 Ill. App. 3d 360, 361-62 (1976), an argument was advanced similar to that asserted here. However, in *Kirby*, the annexed land was to be used for a school and was exempt from taxes. Plaintiffs have not established that the Sanctuary will burden them in the same manner that the property annexed in *Kirby* burdened the plaintiffs in that case. Second, with respect to sales tax revenues being used for future property tax relief, plaintiffs have not pleaded anything beyond mere conclusions to indicate either that property taxes would increase or that sales tax revenues would be used to ameliorate such an increase if it, in fact, occurred. Third, to the extent plaintiffs' allegations can be read as asserting a diminution of services, plaintiffs have not pleaded anything regarding any specific service that has been diminished as a result of the annexation of the Sanctuary.

The Village plaintiffs also allege that they were denied their personal right to vote on the annexation of the Sanctuary and claim this as an alternative basis for standing. However, the procedure set forth in the Illinois Municipal Code (the Code), the statute governing this annexation, provides no such right to these plaintiffs. 65 ILCS 5/7—1—1 *et seq.* (West 1998). We do not read plaintiffs' attack upon the annexation as a challenge to the constitutionality of the annexation statute itself. Therefore, this argument is without merit.

Regarding Gottschalk, the plaintiff residing in the Sanctuary, we reach a different result. Some of the bases for standing asserted by Gottschalk are speculative. For example, he asserts that he is now subject to the taxing discretion of another governmental body as well as the regulations and ordinances of the Village. These allegations demonstrate no adverse or substantial detriment in themselves. In the absence of some showing that the application of the ordinances or the exercise of the discretion complained of has some tangible effect on a personal interest of Gottschalk, these allegations are insufficient to confer standing. Gottschalk has, however, alleged more. Specifically, he complains that, as a result of the annexation, he must now purchase vehicle stickers from the Village, that he has been assessed with Village property taxes, and that he must now pay for a garbage collection service regardless of whether he chooses to use it. These allegations flow directly from the annexation, are adverse in that they result in an increased financial burden, and, unlike being subjected to the Village's ordinances and taxing discretion, are things of substance.

Thus, we conclude that Gottschalk has standing to bring a *quo warranto* action, while the Village plaintiffs do not.

## CONTIGUITY

■ Plaintiffs also argue that the trial court erred in finding that the current action would constitute an impermissible collateral attack upon the prior orders of the two trial courts that approved the two annexations. We will overturn a denial of leave to file a complaint in *quo warranto* only if the trial court abused its discretion in denying the petition. *Nelson*, 169 Ill. App. 3d at 871. The application of the incorrect legal standard constitutes an abuse of discretion. *Zavell & Associates, Inc. v. CCA Industries, Inc.*, 257 Ill. App. 3d 319, 322 (1993). In the present case, plaintiffs challenge both annexations because they do not meet the legal definition of "contiguous" (see, *e.g.*, *People ex rel. Adamowski v. Village of Streamwood*, 15 Ill. 2d 595 (1959)) as required by the Code. The trial court found contiguity to be a question of fact and not subject to attack in a *quo warranto* action. Plaintiffs contend that contiguity is a jurisdictional prerequisite in an annexation and thus is subject to review by *quo warranto*. The resolution of this issue also disposes of many of the related issues raised by the parties.

■ Before turning to the precise issue raised, a review of the nature and purposes of a *quo warranto* action is required. *Quo warranto* is the only appropriate vehicle for challenging a completed annexation. *People ex rel. Foreman v. Village of Round Lake Park*, 171 Ill. App. 3d 443, 455 (1988). The only issue properly raised in such an action is whether the annexation, due to a lack of power or jurisdiction, is a nullity. *People ex rel. Town of Richwoods v. City of Peoria*, 80 Ill. App. 2d 359, 363 (1967). A *quo warranto* action requires a defendant to explain by what authority it acts. *City of Highwood v. Obenberger*, 238 Ill. App. 3d 1066, 1079 (1992). Conversely, the propriety of a given exercise of a properly vested power is not reviewable in such a proceeding. *People ex rel. Chillicothe Township v. Board of Review*, 19 Ill. 2d 424, 427 (1960). The latter may be raised on direct review. *Town of Richwoods*, 80 Ill. App. 2d at 363. Thus, unless contiguity is a jurisdictional prerequisite, as plaintiffs assert, a challenge based on contiguity is beyond the scope of a *quo warranto* action.

■ Further, it must be recognized that a municipality's power to annex land derives entirely from the statute granting that power, and no comparable right existed at common law. *People ex rel. Brzica v. Village of Lake Barrington*, 268 Ill. App. 3d 420, 423 (1994). When the legislature creates a statutory right unknown at common law or equity, it may limit a court's jurisdiction over the subject matter of the newly created right. *Brzica*, 268 Ill. App. 3d at 422. The legislature may impose conditions precedent that must be satisfied before a court gains the power to act pursuant to the statute. *Brzica*, 268 Ill. App. 3d at 423. These preconditions cannot be waived, and strict compliance

with the statute is required. *Brzica*, 268 Ill. App. 3d at 423. When any required conditions precedent are not met, jurisdiction does not exist, and any act taken pursuant to the jurisdiction purportedly conferred by the statute is void. *Brzica*, 268 Ill. App. 3d at 423. Void orders "can be attacked at any time, in any court, either directly or collaterally, provided the party is properly before the court." *Brzica*, 268 Ill. App. 3d at 424. In annexation cases, it has long been held that a petition that fails to comply with the necessary statutory requirements is insufficient to confer jurisdiction upon the court reviewing the petition. *People ex rel. Jordan Co. v. Village of Forest View*, 21 Ill. 2d 384, 390 (1961).

Thus, in order to resolve the present matter, we must determine whether the legislature intended contiguity to be a jurisdictional prerequisite to an annexation. For several reasons, we conclude that it did. We turn first to section 7—1—4 of the Code, which sets forth the procedures to be followed in a hearing upon a petition for annexation. 65 ILCS 5/7—1—4 (West 1998). This statute provides that the court reviewing the petition shall first determine whether any landowners on the perimeter of the area to be annexed object to the annexation and can be excluded. 65 ILCS 5/7—1—4 (West 1998). Once this preliminary matter is addressed, the statute states that "the only matter for determination shall be the *validity* of the annexation petition or ordinance." (Emphasis added.) 65 ILCS 5/7—1—4 (West 1998). Thereafter, the court is directed that if it finds "(1) the annexation petition is not signed by the requisite number of electors or property owners of record; or (2) that the described property is not contiguous to the annexing municipality; or (3) that the description is materially defective; or (4) that the petition or ordinance, as the case may be, *is otherwise invalid*, the court shall dismiss the petition or ordinance." (Emphasis added.) 65 ILCS 5/7—1—4 (West 1998). In interpreting a statute, its plain language is the best indication of the legislature's intent. *Premier Property Management, Inc. v. Chavez*, 191 Ill. 2d 101, 121 (2000). Words are to be given their ordinary meaning unless another meaning is indicated. *Fort Dearborn Life Insurance Co. v. Holcomb*, 316 Ill. App. 3d 485, 492 (2000). In the present statute, the legislature spoke in terms of validity and invalidity. These terms suggest that a petition that does not meet the criteria set forth in the statute (65 ILCS 5/7—1—4 (West 1998)) is without any legal force or effect. See *Gonzales-Blanco v. Clayton*, 120 Ill. App. 3d 848, 850 (1983). In other words, any action based upon a petition that is deficient with regard to these criteria is void *ab initio*. See *Brzica*, 268 Ill. App. 3d at 423 ("If, in fact, the petition does not satisfy all of the statutory jurisdictional requirements, then the petition may be declared invalid or void as the court would not have had the authority to act").

In *Brzica,* this court considered whether the requirement that a petition be signed by a requisite number of property owners and electors was a jurisdictional prerequisite to an annexation and concluded that it was. *Brzica,* 268 Ill. App. 3d at 423. The signature requirement appears in the same sentence, quoted above, as the contiguity requirement. 65 ILCS 5/7—1—4 (West 1998). Given this close relationship, nothing warrants interpreting one as a factual matter and the other as jurisdictional matter. *Cf. Moran v. Katsinas,* 16 Ill. 2d 169, 174 (1959) (holding that the same word appearing in different places in a statute should be given a consistent meaning absent contrary intent of the legislature). By including both requirements in the same portion of the statute (section 7—1—4), the legislature manifested its intent that both were to serve the same function.

An additional indication that the legislature intended contiguity to be a jurisdictional prerequisite appears in the statute of limitations for challenging an annexation (65 ILCS 5/7—1—46 (West 1998)). Normally, void orders may be attacked at any time. *Brzica,* 268 Ill. App. 3d at 424. However, the legislature has provided that a one-year limitations period applies in annexation cases:

> "The limitation set forth in this section shall apply to any annexation, even where the judge, body or officer annexing the territory did not at the time of such annexation have jurisdiction of the subject matter, and irrespective of whether such annexation may otherwise be defective or void, except that the limitation of this Section shall not apply to annexations of territory which was not contiguous at the time of annexation and is not contiguous at the time an action is brought to contest such annexation." 65 ILCS 5/7—1—46 (West 1998).

Again, in this section, contiguity is treated in the same portion of a statute that deals with jurisdictional matters. Moreover, that contiguity provides the only exception to the application of the statute of limitations indicates that the legislature considered it a very basic defect.

Finally, we note that many reported cases have involved contiguity challenges to annexations brought in *quo warranto* actions. See *People ex rel. Village of Long Grove v. Village of Buffalo Grove,* 160 Ill. App. 3d 455 (1987); *People ex rel. Village of Hazel Crest v. Village of Homewood,* 132 Ill. App. 3d 632 (1985); *Kirby,* 43 Ill. App. 3d 360; *People ex rel. Bowman v. Village of Bensenville,* 64 Ill. App. 3d 857 (1978); *Hanrahan,* 42 Ill. App. 3d 825; *People ex rel. Cherry Valley Fire Protection District v. City of Rockford,* 120 Ill. App. 2d 275 (1970); *People ex rel. Coojar Realty Corp. v. Village of Burr Ridge,* 81 Ill. App. 2d 203 (1967); *People ex rel. Village of South Barrington v. Village of Hoffman Estates,* 30 Ill. 2d 385 (1964); *Henderson,* 38 Ill. App. 2d 9; *People ex rel. Ad-*

*amowski v. Village of Streamwood*, 15 Ill. 2d 595 (1959). It has long been established that, in a *quo warranto* action, a party may only raise the question of whether an action by a governmental body was performed without the proper jurisdiction or authority. *Town of Richwoods*, 80 Ill. App. 2d at 363; *People ex rel. Cash v. Wells*, 291 Ill. 584, 586 (1920). Given this long-standing and well-established limitation on *quo warranto* actions, the above-cited cases implicitly recognize that a challenge based on contiguity is a challenge to the authority through which an annexation is accomplished. While they do not expressly pass upon the issue of whether the lack of contiguity is a jurisdictional defect, their very existence demonstrates that attacks like the one brought by plaintiffs have long been accepted in Illinois. In light of this long history, absent some compelling justification, we will not now exclude contiguity challenges from the scope of the *quo warranto* action.

Accordingly, taking the language of various sections of the Code pertaining to annexations into account, as well as the history of *quo warranto* proceedings and annexation challenges, we conclude that contiguity is a jurisdictional prerequisite, and its absence can be raised in a *quo warranto* action.

■ Having determined that contiguity is jurisdictional, we may now address the Village's arguments. The Village contends that the five-year limitations period contained in section 13—205 of the Code of Civil Procedure bars this action. 735 ILCS 5/13—205 (West 1998). This limitation applies to all actions "not otherwise provided for." 735 ILCS 5/13—205 (West 1998). However, a void judgment may be attacked at any time. *Brzica*, 268 Ill. App. 3d at 424. Thus, the Village's reliance on section 13—205 is misplaced. For the same reason, the Village's argument that plaintiffs have waived the issue by failing to object during the annexation proceeding must be rejected. Because we have determined contiguity is a jurisdictional prerequisite, an objection based on the lack of contiguity cannot be waived. *People ex rel. Brzica*, 268 Ill. App. 3d at 423.

The Village relies on *People ex rel. Village of Lake Bluff v. City of North Chicago*, 5 Ill. App. 3d 142 (1972), in support of the proposition that the lack of contiguity is not a jurisdictional defect. In that case, the court held that a challenge based on contiguity was barred by the one-year statute of limitations contained in 7—1—46 of the Cities and Villages Act (see Ill. Rev. Stat. 1969, ch. 24, par. 7—1—46 (now, as amended, 65 ILCS 5/7—1—46 (West 1998))). *Village of Lake Bluff*, 5 Ill. App. 3d at 147. At the time, jurisdictional defects were excluded from the operation of the statute of limitations. See Ill. Rev. Stat. 1969, ch. 24, par. 7—1—46. Thus, by finding the contiguity challenges

barred, the court necessarily found they were not jurisdictional. However, subsequent to that case, the statute was amended to apply to jurisdictional matters, although contiguity was specifically excluded from the limitations period. See 65 ILCS 5/7—1—46 (West 1998). The decision in *Village of Lake Bluff* was based on a statute that has been amended in a manner relevant to the present case. Thus, it is of dubious precedential value here.

## OPEN MEETINGS ACT

■ Plaintiffs also contend that the annexation of the Sanctuary is invalid because the meeting of the Village board of trustees that adopted the annexation ordinance did not comport with the Open Meetings Act (Act) (5 ILCS 120/1 *et seq.* (West 1998)). One of the trustees who voted in favor of the annexation participated in the meeting by telephone. According to plaintiffs, this prevented the trustee from fully participating in the meeting and also denied plaintiffs the ability to fully express their views to this trustee. Because of this alleged defect, plaintiffs ask us to invalidate the annexation. Plaintiffs also assert that the Village failed to ratify this vote. According to plaintiffs, the Village has adopted Robert's Rules of Order, and these rules require the ratification of any vote conducted by telephone. However, plaintiffs have provided no case law or statutory authority to support their contention that the violation of a municipal body's internal rules of procedure must be remedied by the invalidation of any resulting actions, and it is thus waived. See *Smagala v. Owen*, 307 Ill. App. 3d 213, 219 (1999).

■ Plaintiffs argue that the purpose of the Act is to "allow full public participation" in meetings. However, the Act itself states that its purpose is to ensure that the actions of public bodies "be taken openly and that their deliberations be conducted openly." 5 ILCS 120/1 (West 1998). No reasonable construction of the Act's statement of purpose confers a right upon the plaintiffs to participate in a public hearing. Rather, the Act's purpose is satisfied so long as meetings are not conducted in secrecy. Plaintiffs do not argue that they were unable to perceive what was taking place in the meeting.

Only one case has considered the question of whether telephonic participation in a meeting violates the Act. See *Freedom Oil Co. v. Pollution Control Board*, 275 Ill. App. 3d 508 (1995). In finding no violation of the Act, the *Freedom Oil* court noted that "[t]here is nothing within the Open Meetings Act which specifically prohibits conducting a meeting by telephone conference or requires members of a public body to be in each other's physical presence to establish a quorum." *Freedom Oil Co.*, 275 Ill. App. 3d at 515. We see no reason to conclude

otherwise here. Plaintiffs attempt to distinguish *Freedom Oil* because the meeting in question there involved the correction of a clerical error in an order of the board. However, this is a distinction that the Act does not make (see 5 ILCS 120/1 *et seq.* (West 1998)), and we do not interpret the Act as applying with any less force because the action taken at a meeting was relatively mundane. ·

Furthermore, relief under the Act is completely discretionary. 5 ILCS 120/3(c) (West 1998). Even where a meeting has been closed to the public, the actions taken at it are not necessarily void. *Betts v. Department of Registration & Education*, 103 Ill. App. 3d 654, 663 (1981). *De minimis* violations of the Act have been held not to support nullification of actions taken at such meetings. See *Chicago School Reform Board of Trustees v. Martin*, 309 Ill. App. 3d 924, 936 (1999). Assuming *arguendo*, that telephonic participation in a meeting violates the Act in some way, plaintiffs fail to demonstrate why the extreme remedy of nullification is appropriate in the present case.

Therefore, we must reject plaintiffs' challenge to the annexation of the Sanctuary based upon the Open Meetings Act.

## CONCLUSION

For the foregoing reasons, we affirm the order of the court with respect to the Village plaintiffs, reverse with regard to Gottschalk, and remand this cause for further proceedings. In passing on these issues, we offer no opinion as to whether leave to file a *quo warranto* complaint should be granted in this case. As we read the trial court's reasoned and articulate decision, its denial of plaintiffs' petition was based solely on the questions of whether plaintiffs have standing and whether contiguity is jurisdictional. However, in determining whether to grant leave to file a *quo warranto* action, trial courts possess broad discretion. *People ex rel. Nelson*, 169 Ill. App. 3d at 871 ("The question of whether leave should be granted to file a complaint in *quo warranto* is a matter which lies within the sound discretion of the trial court, which may consider all surrounding circumstances and conditions, the motives of the petitioner in having the proceeding instituted, and whether the public interest will be served by permitting the action"). While the trial court did find *laches* inapplicable, we do not read its decision as being based in any way upon the discretion it possesses in these matters. In this opinion, we conclude only that Gottschalk has standing and that the lack of contiguity is a jurisdictional defect that may be asserted in a *quo warranto* action.

Affirmed in part and reversed in part; cause remanded.

RAPP and CALLUM, JJ., concur.